IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRELL BOOKHART,** | : | |
|     **Plaintiff** | : | No. 1:25-cv-00334 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **TRI-COUNTY OPPORTUNITIES** | : | |
| **INDUSTRIALIZATION CENTERS, INC.** | : | |
| **d/b/a TRI-COUNTY OIC,** | : | |
|     **Defendant** | : | |

## MEMORANDUM

Before the Court is a motion seeking partial dismissal of Plaintiff Tyrell Bookhart ("Plaintiff")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Tri-County Opportunities Industrialization Centers, Inc. d/b/a Tri-County OIC ("Defendant"). (Doc. No. 6.) For the following reasons, the Court will deny Defendant's motion.

**I. BACKGROUND**[1]

Plaintiff is a thirty-eight (38) year old individual who was employed by Defendant, a non-profit organization located in Harrisburg that provides job training and placement assistance for youth and formerly incarcerated individuals. (Doc. No. 1 ¶¶ 7–9.) Plaintiff avers that Defendant hired him to fill the position of Employment Specialist on or about October 17, 2023. (Id. ¶¶ 13–14.) Plaintiff asserts that, in his role as Employment Specialist, he was assigned to work on Project SOAR, a comprehensive re-entry program that addresses the challenges of young adults who have been involved in the criminal justice system, helping them successfully transition back into the community. (Id. ¶ 15.) Plaintiff alleges that his primary duties

---

[1] The factual background is drawn from Plaintiff's complaint, the allegations of which the Court accepts as true for purposes of the pending motion to dismiss. See Kedra v. Schroeter, 876 F.3d

included, but were not limited to, assisting clients in training for job searches (conducting mock interviews, resume building, and confidence building); networking with various hiring facilities and employers to introduce the SOAR program and solicit their participation therein; serving as a spokesperson for the Defendant when introducing the program to the community; and assisting with grant writing for the SOAR program. (Id. ¶ 16.) Plaintiff avers that he reported to Christina Johnson ("Johnson"), Executive Director, and Timothy Downing ("Downing"), SOAR supervisor. (Id. ¶ 17.)

Plaintiff asserts that he maintained an excellent job performance rating with Defendant during his employment, receiving the Employee of the Month award on March 11, 2024, bonuses for successful completion of large reports, and the offer of a promotion to the role of Co-Director of Re-Entry on March 3, 2024. (Id. ¶ 18.) Plaintiff avers that Downing, who directly supervised Plaintiff in his role as Employment Specialist, characterized his work performance as "prolific and efficient." (Id.)

Plaintiff alleges that Defendant, who did not have a human resources officer during Plaintiff's tenure, did not provide Plaintiff with an employee handbook, any policies or procedures, or any training indicating what steps to take if he was subject to sexual harassment, discrimination, or retaliation in the workplace. (Id. ¶ 19.)

Plaintiff asserts that, in January of 2024, Johnson began to subject Plaintiff to a hostile work environment through repeated instances of sexual harassment. (Id. ¶ 20.) As an example, Plaintiff avers that:

> during a team meeting at the Downtown Daily Bread, while ogling Plaintiff [], the said Johnson told the meeting attendees that she brings Plaintiff [] to such meetings "for eye candy." Plaintiff [] protested the sexually-suggestive remark of Johnson and told her that the comment was inappropriate and made him feel

---

424, 434 (3d Cir. 2017).

uncomfortable. Johnson retorted that Plaintiff [] would need to have "tough skin" to work with her, evidencing her refusal to cease and desist.

(Id. ¶ 21.) Plaintiff alleges that "[n]otwithstanding [his] protestations, Johnson's sexual harassment of Plaintiff [] intensified." (Id. ¶ 22.) Plaintiff avers that "[i]n February of 2024, Johnson began making almost daily sexually-suggestive and lewd comments about [Plaintiff's] physical appearance and attire." (Id. ¶ 23.) Plaintiff asserts that "Johnson repeatedly stated in a lascivious fashion that Plaintiff [] looked 'good' and 'nice,' implying that she wanted to commence a sexual relationship with [him]." (Id. ¶ 24.) Plaintiff asserts that "Johnson commented on how [Plaintiff's] physique appeared when he wore certain pants, while eyeing his body up and down." (Id. ¶ 25.) Plaintiff alleges that he "repeatedly expressed his discomfort with Johnson's sexually suggestive comments and attention and requested that she treat him in a strictly professional manner in the workplace" after which he asserts that "Johnson laughed and quipped back that she had license to say whatever she wanted because she is 'the boss,' making clear that she had no intention of stopping her sexual pursuit of [him]." (Id. ¶ 26.)

Plaintiff asserts that "[i]n an effort to force [him] to spend more time at work with Johnson, on or about March 3, 2024, she offered Plaintiff [] a promotion to Co-Director of Re-Entry", a role that would require him "to work closely with Johnson." (Id. ¶ 27.) Plaintiff alleges that:

> [a]s further harassment, during a weekly Re-Entry team meeting with staff of both the Defendant and the Department of Corrections ("DOC"), Johnson introduced [him] to the DOC staff as "the eye candy we bring to meetings." Shocked by Johnson's lewd and sexually-suggestive remark, a female DOC employee stated, "I hope HR's not around." Johnson retorted, "I am HR," evidencing the Defendant's lack of any mechanism to remediate sexual harassment in the workplace.

(Id. ¶ 28.) Plaintiff asserts that, immediately following the meeting, he "met with Downing to discuss his discomfort at the meeting due to Johnson's sexually-offensive comments" and

3

"Downing apologized and acknowledged to Plaintiff [] that Johnson had indeed acted in an inappropriate manner towards him." (Id. ¶ 29.) Plaintiff avers that he "explained to Downing that this was not the first occasion in which Johnson had made such a statement in the presence of other professional colleagues and peers" and "Downing assured Plaintiff [] that he would escalate his concerns and try to intervene on [Plaintiff's] behalf." (Id.)

Plaintiff alleges that "[s]everal days later, Downing met with Plaintiff [] and told him that he had addressed his complaints with the said Johnson" and "discouraged Plaintiff [] from further escalating the sexual harassment, stating that they 'don't want a bigger issue.'" (Id. ¶ 30.) Plaintiff asserts that "[t]hereafter, on or about March 16, 2024, Johnson sent Plaintiff [] an email asking if he still planned to accompany her to a work-sponsored event at the White House in Washington, D.C."; however, "[i]nasmuch as the Defendant failed to take any remedial action in response to [Plaintiff's] complaints of sexual harassment, Plaintiff [] felt uncomfortable being alone with Johnson and declined to attend the event." (Id. ¶ 31.) Plaintiff avers that "[a]s a further attempt to distance himself from Johnson at work, on or about March 18, 2024, Plaintiff [] turned down the promotion to Co-Director of Re-Entry and stated his intent and desire to stay in his role as an Employment Specialist." (Id. ¶ 32.)

Plaintiff asserts that "[o]n March 22, 2024, Johnson abruptly terminated [Plaintiff's] employment, falsely alleging that his 'performance' was lacking." (Id. ¶ 33.) Plaintiff states that he "believes and avers that the Defendant's articulated reason for his termination is false and pretextual and that the Defendant actually terminated his employment in retaliation for protesting unlawful sexual harassment in the workplace", as evidenced by the fact that "just days prior, Plaintiff [] received the Employee of the Month award and an offer of promotion to the Co-Director of Re-Entry position." (Id. ¶¶ 34–35.) Plaintiff asserts that "[a]s further evidence

4

of pretext, following [his] termination meeting on March 22, 2024, Downing escorted Plaintiff [] out of the office and stated he did not support the decision and that Johnson was 'crazy' to terminate his employment." (Id. ¶ 36.)

On February 2, 2025, Plaintiff filed his complaint in this court (Doc. No. 1), asserting one count against Defendant—"Title VII – Hostile Work Environment Sexual Harassment, Retaliation". Plaintiff alleges that "[t]he actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff [] to a hostile work environment through various instances of severe and pervasive sexual harassment, and in retaliating against Plaintiff [] for protesting unlawful sexual harassment in the workplace, ultimately resulting in the termination of his employment, constituted violations of Title VII." (Id. ¶ 38.) Plaintiff further alleges that, due to Defendant's conduct, he "sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon" and "suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem." (Id. ¶¶ 39–40.)

On April 11, 2025, Defendant filed the instant motion to dismiss for failure to state a claim (Doc. No. 6), and a brief in support of the motion (Doc. No. 7). Defendant's motion seeks dismissal of the portion of Count I of Plaintiff's complaint asserting a claim of hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") but does not challenge Plaintiff's Title VII retaliation claim. Plaintiff filed a brief in opposition to the motion on April 24, 2025 (Doc. No. 9), and Defendant filed a reply brief on May 7, 2025 (Doc. No. 10). Having been fully briefed, Defendant's motion is ripe for disposition.

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).   The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 552 U.S. 662 (2009).   Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).   To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible."  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.   As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the

6

United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

### III. DISCUSSION

As noted, Defendant argues that Plaintiff's complaint fails to plead sufficient facts to give rise to a hostile work environment sexual harassment claim under Title VII. (Doc. No. 7 at 5.) Specifically, Defendant argues that Plaintiff's complaint fails to plausibly allege four of the five elements of a Title VII hostile work environment sexual harassment claim, namely: (1) that the alleged conduct occurred because of his sex; (2) that the alleged harassment was severe or pervasive; (3) that the alleged harassment detrimentally affected Plaintiff; and (4) that the alleged harassment would have detrimentally affected a reasonable person in Plaintiff's position. (Id. at 11–14.) Defendant requests dismissal of the claim with prejudice. (Id. at 5–6.)

In response, Plaintiff maintains that his complaint plausibly alleges all of the required elements of a Title VII hostile work environment sexual harassment claim (Doc. No. 9-1 at 16–22); however, Plaintiff requests that, should the Court determine that his complaint fails to plausibly allege some element of such a claim, the Court grant him the opportunity to file an amended complaint to cure any deficiencies (id. at 23).

A plaintiff must demonstrate the following to establish a Title VII hostile work environment claim:

> 1) [T]he employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally

7

>   affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) [there was] respondeat superior liability.

See Nitkin v. Main Line Health, 67 F.4th 565, 570 (3d Cir. 2023) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)).  "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Defendant challenges the adequacy of Plaintiff's complaint as to elements (1) through (4); accordingly, the Court addresses each in turn.

As an initial matter, the Court finds that Plaintiff has plausibly alleged the first element of a hostile work environment claim—that the alleged conduct occurred because of his sex.  Defendant argues that Plaintiff's complaint fails in this regard because "[n]o where in Plaintiff's [c]omplaint does he reference his gender or sex being a factor to any of the comments Johnson said to him."  (Doc. No. 7 at 11.)  However, it is well-established that comments to an individual about his or her body plausibly allege discrimination based on sex.  See Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 214 (3d Cir. 2017) (concluding that defendant's comments about plaintiff's body supported claim that harassment occurred because of sex); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990) (stating that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course"); Carrillo v. Empire Hotel Servs. LLC, No. 2:22-cv-03273, 2023 WL 3993767, at *3 (D.N.J. June 14, 2023) (finding that comments by defendant to plaintiff regarding body or

8

appearance that are sexual in nature satisfy the "because of his/her sex" element of a hostile work environment claim).[2]  The Court turns to Defendant's challenge as to whether Plaintiff's complaint plausibly alleges conduct that is "severe or pervasive," the second element of a hostile work environment claim.

Sexual harassment constitutes severe or pervasive behavior when it "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment." See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (citation omitted).  The "severe or pervasive" language "means that severity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable conduct will contaminate the workplace only if it is pervasive." See Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) (internal quotation marks and citation omitted).  "District courts are reluctant to dismiss hostile work environment claims at the motion to dismiss stage under consideration of this element, because the determination of what constitutes severe or pervasive does not lend itself to a mathematically precise test, but instead requires that a court look to the totality of the circumstances." D.F. and W.F. v. CMBK Resort Operations, LLC, No. 3:23-cv-00517, 2024 WL 3605940, at *4 (M.D. Pa. July 31, 2024) (internal quotation marks and citation omitted); see Fedder v. Bloomsburg University of Pennsylvania, No. 4:23-cv-01678, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (noting reluctance of district courts in this Circuit to dismiss complaints at the 12(b)(6) stage where the

---

2  In support of its position, Defendant relies on Barzyk v. Benvenuti Arts, Inc., No. 24-cv-00956, 2025 WL 451678 (M.D. Pa. Feb. 10, 2025), a case in which the court found that the plaintiff failed to plausibly allege the first element of a hostile work environment sexual harassment claim.  However, in that case, the court found significant the fact that, as to the three instances of sexual or inappropriate comments made in the virtual presence of the plaintiff, "there [were] no allegations that these comments were directed to her or about her." Id. at *4.  Accordingly, the facts alleged in Barzyk are distinguishable from the facts alleged in the instant

primary challenge to a hostile work environment claim is whether the relevant conduct is severe or pervasive).

Defendant summarizes Plaintiff's allegations as consisting of the following—"over a period of approximately two and a half months, his supervisor referred to him as 'eye candy' on two occasions, stated that he looked 'good' or 'nice' 'repeatedly', and once commented on how he looked in certain pants"—and argues that "[t]hese isolated and arguably complimentary remarks, occurring intermittently over the course of several weeks, do not rise to the level of severe or pervasive conduct necessary to support a hostile work environment claim." (Doc. No. 7 at 12.)

In response, Plaintiff maintains that Johnson's conduct was both severe and pervasive. Plaintiff notes that his complaint pleads that Johnson "began making almost daily sexually suggestive and lewd comments about [Plaintiff's] physical appearance and attire" beginning in February of 2024. (Doc. No. 9-1 at 19 (quoting Doc. No. 1 ¶ 23)). Plaintiff also asserts that his complaint pleads that Johnson's comments about Plaintiff looking "good" and "nice" were made "repeatedly" and in a "lascivious fashion." (Id. (quoting Doc. No. 1 ¶ 24)). Plaintiff maintains that the humiliating nature of Johnson's "eye candy" comments is evidenced in his pleading by the "I hope HR's not around" reaction of a colleague to the statements and Downing's apology to Plaintiff for Johnson's conduct. (Id. at 20 (citing Doc. No. 1 ¶¶ 28–29)). Plaintiff argues that the allegations of his complaint support a conclusion that Johnson's behavior altered his work environment "to the point where he declined to attend a prestigious work event at the White House and turned down a promotion to Co-Director of Re-Entry in an attempt to physically distance himself from Johnson." (Id. at 19–20 (citing Doc. No. 1 ¶¶ 31–32)).

---

case.

Upon careful consideration of the allegations of Plaintiff's complaint, the parties' briefs, and relevant authority, the Court concludes that Plaintiff's complaint plausibly alleges pervasive conduct by Johnson. The complaint alleges "eye candy" comments made by Johnson about Plaintiff in the presence of colleagues, Johnson's repeated, almost daily, remarks about Plaintiff's physique and attire occurring for at least a period of a month prior to Defendant's offer of a promotion to Plaintiff, and Plaintiff's refusal to attend a prestigious work event and to accept a promotion because of that conduct. "Whether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery . . . ." Castleberry, 863 F.3d at 266; see Fedder, 2024 WL 580552, at *3 (acknowledging district court reluctance to dismiss a complaint pursuant to a Rule 12(b)(6) challenge to the severe or pervasive element and denying motion to dismiss). The Court turns to Defendant's challenge to the sufficiency of Plaintiff's allegations as to the third and fourth elements of a hostile work environment claim—whether Plaintiff plausibly alleges conduct that "detrimentally affected" him and that would "detrimentally affect" a reasonable person in Plaintiff's position.

The Court easily dispenses with Defendant's challenge to the third and fourth elements of a hostile work environment claim. The Court finds unavailing Defendant's argument that Plaintiff "does not allege that the conduct interfered with his work performance or otherwise disrupted his ability to function in the workplace" because "during the relevant time period, he was offered a promotion and received the Employee of the Month award." (Doc. No. 7 at 13.) As noted by Plaintiff, his complaint contains allegations that he was uncomfortable with Johnson's conduct and protested that conduct to her and to Downing; further, Plaintiff's complaint asserts that he turned down the opportunity to attend a prestigious work event at the White House and a promotion to distance himself from Johnson, two actions which plausibly

11

adversely affected his professional growth.   For the same reason, the Court is also unpersuaded by Defendant's argument that Plaintiff's complaint fails to plausibly allege that a reasonable person in Plaintiff's position would be detrimentally affected by Johnson's conduct.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion for partial dismissal of Plaintiff's complaint.   An appropriate Order follows.

      s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania